IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

PAMELA JANE HAGER                                                    PLAINTIFF

V.                          No. 4:24-CV-00847-LPR-ERE

SOCIAL SECURITY ADMINISTRATION,
COMMISSIONER                                                         DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("RD") has been sent to United States District Judge Lee P. Rudofsky. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include a factual or legal basis, and be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact, and Judge Rudofsky can adopt this RD without independently reviewing the record.

I.   **Background**

On February 7, 2021, Ms. Pamela Hager filed an application for benefits due to knee injuries, arthritis, PTSD, anxiety, hypertension, asthma, fibromyalgia, and carpal tunnel syndrome. *Tr. 11, 240*.

Ms. Hager's claim was denied initially and upon reconsideration. An Administrative Law Judge ("ALJ") held a telephonic hearing on July 17, 2023, where Ms. Hager appeared with her lawyer, and the ALJ heard testimony from Ms. Hager and a vocational expert ("VE"). *Tr. 33-56*. The ALJ issued a decision on

1

November 24, 2023, finding that Ms. Hager was not disabled. *Tr. 11-21*. The Appeals Council denied Ms. Hager's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-3*.

Ms. Hager, who was fifty-six years old at the time of the hearing, attended some college and has past relevant work experience as a patrolman and a check cashier. *Tr. 20, 53*.

## II.   The ALJ's Decision[1]

The ALJ found that Ms. Hager had not engaged in substantial gainful activity since May 25, 2019, the alleged onset date. *Tr. 13*. The ALJ also concluded that Ms. Hager has the following severe impairments: left knee tendon tear, status post-repair; left shoulder rotator cuff tear, status post-repair; cervical degenerative changes; hallux valgus of bilateral feet, status post right ankle avulsion fracture; bilateral thumb degenerative changes; bilateral sensorineural hearing loss; asthma; coronary artery disease; congestive heart failure; venous insufficiency; and obesity. *Tr. 14*. However, the ALJ concluded that Ms. Hager did not have an impairment or

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g).

combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 15.*

According to the ALJ, Ms. Hager had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: (1) occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; (2) no climbing of ladders, ropes, or scaffolds; (3) frequent use of the upper extremities to reach, handle, finger, and feel; (4) only occasional exposure to atmospheric conditions (such as fumes, noxious odors, dusts, mists, gases, and poor ventilation); and (5) no work in loud or very loud noise environments. *Tr. 16.*

In response to hypothetical questions incorporating the above limitations, the VE testified that a substantial number of potential jobs were available in the national economy that Ms. Hager could perform, such as her past relevant work as a check cashier. *Tr. 20.* Accordingly, the ALJ found that Ms. Hager was not disabled.

### III. Discussion

#### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence]

adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

    B.    **Ms. Hager's Arguments for Reversal**

Ms. Hager contends that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ erred in determining that she could perform her past relevant work; (2) the RFC is unsupported by the record; and (3) the ALJ asked irrelevant financial questions. *Doc. 9 at 14-23*.

    C.    **Analysis**

        1.    **The ALJ's Findings on Past Relevant Work**

Ms. Hager asserts that the ALJ erred in determining that she could perform her past relevant work because the ALJ did not correctly identify her past work, relied on unreliable VE testimony, and failed to resolve conflicts between the VE's testimony and the DOT. *Id. at 14-18*.

Based on Ms. Hager's description of her employment history, the VE testified that Ms. Hager's past relevant work was as a check cashier (DOT 211.462-026). *Tr.*

*53*. While Ms. Hager may believe that she performed the job at a light work level, the VE testified that the job is generally performed at the sedentary level. The ALJ asked the VE if the hypothetical person, with restrictions like those found in the RFC, could perform the job as it is generally performed in the economy, and the VE answered affirmatively. *Tr. 54*. Ultimately, the ALJ found that Ms. Hager could perform her past relevant work[2] at the sedentary level, as that "job is generally performed." *Tr. 20*. See *Evans v. Shalala*, 21 F.3d 832, 834 (8th Cir. 1994) ("[E]ven though Evans cannot perform the actual demands of his particular past relevant work, if the ALJ finds he can carry out his job as performed generally within the national economy, he is not disabled under the regulations.").

Ms. Hager also takes issue with the VE testifying that the SVP[3] 3 job can be learned in "up to 30 days." *Doc. 8 at 16, Tr. 53*. Even assuming this statement is erroneous, it is harmless, since Ms. Hager had no mental restrictions in her RFC.

Notably, Ms. Hager's issue with the VE's description of her past relevant work and definition of SVP 3 were not raised during the hearing and Ms. Hager does

---

[2] There is a typo in the ALJ's finding, referencing "Check Casher" at one point, rather than Check Cashier. However, the correct DOT listing for Check Cashier is referenced repeatedly, which is consistent with the RFC for sedentary work. *Tr. 20, 53*.

[3] SVP or specific vocation preparation describes a job's skill level. SVP is the "amount of time required for a typical claimant to [l]earn the techniques, [a]cquire the information, and [d]evelop the facility needed for average performance in a job." *See* Social Security Program Operations Manual System (POMS), https://secure.ssa.gov/poms.nsf/lnx/0425001001#a7 (last visited Mar. 18, 2025).

not point to a job description that she finds more accurate. If there were a real conflict, Ms. Hager could have sought clarification at the hearing. Finally, Ms. Hager's past job description is consistent with the definition of a check cashier.

Again, the ALJ did not err in concluding that Ms. Hager could perform her past relevant work as it is generally performed.

### 2. The RFC is Supported by the Record

Ms. Hager asserts that the RFC fails to explain how someone with her upper-extremity impairments could frequently use her upper extremities to reach, handle, finger, and feel. *Doc. 8 at 19*. She also argues that the ALJ failed to "explain whether [she] was limited to sedentary work because of her spine, her knees, or her feet" or how someone with these alleged impairments could occasionally climb ramps/stairs, kneel, crouch, and crawl. *Id.*

An "ALJ is not required to explicitly reconcile every conflicting shred of medical evidence." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (cleaned up). Nor is an ALJ required to "list each RFC limitation followed by the specific evidence that supports it . . . ." *Davis v. Colvin*, No. 3:14-CV-05075-MDH, 2015 WL 1964791, at *5 (W.D. Mo. May 1, 2015). "To the extent the ALJ did not adopt all of the limitations Plaintiff stated in her testimony, it is reasonable to believe that the ALJ found that Plaintiff was not that limited." *Eldred v. Saul*, No. 19-05075-CV-SW-MDH-SSA, 2020 WL 7138623, at *3 (W.D. Mo. Dec. 7, 2020). "An ALJ's

reasoning need only be clear enough to allow for appropriate judicial review. The ALJ's brevity is not reversible error." *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021) .

Without elaborating or citing to medical evidence in the record, Ms. Hager questions why the ALJ limited her to frequent use of the upper extremities, rather than a more restrictive limitation. The ALJ, first, properly noted that none of Ms. Hager's upper-extremity impairments met a listing. *Tr. 15*. The ALJ also considered a September 2022 consultative exam that revealed normal range of motion on the shoulders and hands as well as normal grip. *Tr. 18, 1234-35*. While the ALJ ultimately found unpersuasive the September 2022 exam's "no limitations" finding, the results were considered when limiting Ms. Hager to frequent use of her upper extremities, rather than constant. Although Ms. Hager claims she is capable of no more than occasional use of the upper extremities, the ALJ's conclusion is supported by the record. As to Ms. Hager's bilateral hand pain, a May 21, 2021 exam revealed only normal findings. *Tr. 667*. Regarding Ms. Hager's shoulder impairments, she had surgery, followed by physical therapy, and little else in the record shows any ongoing shoulder issues. Notes repeatedly indicated that her range of motion was improving, and therapy was going well. *Tr. 1227, 1230, 1584, 1586, 1588, 1590, 1592, 1594, 1596, 1598, 1600, 1602, 1605*. As for Ms. Hager's thumbs, the evidence was also unremarkable, showing only mild to moderate issues. *Tr.1251*. Only

conservative treatment – anti-inflammatories and braces – was necessary for her thumbs. *Tr. 1251*. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (noting that only conservative treatment weighs against a finding of disability).

Ms. Hager asserts that the ALJ fails to specifically explain each of the impairments which resulted in each restriction in the RFC. "An ALJ is not required to annotate their RFC findings, or explain line-by-line how each piece of evidence does (or does not) translate into an RFC limitation." *Catharine E. v. Colvin*, No. CV TJS-24-0265, 2024 WL 5159162, at *2 (D. Md. Dec. 18, 2024). Here, the ALJ's decision properly discusses the evidence, both objective and subjective, and sufficiently explains the ultimate findings. The microscopic explanation Ms. Hager appears to want is not required by law.

Ms. Hager contends that the ALJ failed to "properly articulate" APRN Kayla Bond's medical opinion. *Doc. 8 at 21*. To the contrary, the ALJ described exactly what Nurse Bond said – "the claimant would benefit from leg elevation and avoiding prolonged standing or sitting"[4] – and then explained that this was "undefined

---

[4] Nurse Bond's notes read:

The patient would benefit from long term conservative treatment for venous insufficiency include:
- Elevation of legs whenever feasible during the day and/or night (toes above nose)
- Avoid prolong stationary standing or sitting . . . .

*Tr. 1525*.

suggestions for 'benefit' rather than functional limitation." *Tr. 20*. There is no error in the ALJ's interpretation, simply disagreement by Ms. Hager.

### 3. The Financial Questions Were Harmless

Ms. Hager contends that the ALJ asked questions about her finances that were "not related at all" to her claim. *Doc. 8 at 21-23*. However, Ms. Hager has presented neither argument nor case law that would either support a finding of prejudice or show that this questioning impacted the ALJ's disability determination.

## IV. Conclusion

The ALJ applied proper legal standards in evaluating Ms. Hager's claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

Dated 18 March 2025.

_____
UNITED STATES MAGISTRATE JUDGE